ORIGINAL FILED

MAR ~ 2 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2  ANDREW S. FRIEDMAN (*To be admitted Pro Hac Vice*)
   ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
3  PATRICIA N. SYVERSON (203111)
   2901 N. Central Avenue, Suite 1000
4  Phoenix, AZ 85012
   Telephone:  602/274-1100
5  Facsimile: 602/274-1199

6  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
7  TODD D. CARPENTER (234464)
   600 W. Broadway, Suite 900
8  San Diego, California 92101
   Telephone:  619/756-6978
9  Facsimile:  602/798-5860

E-filing

10

11  Attorneys for Plaintiff

12            UNITED STATES DISTRICT COURT

13          NORTHERN DISTRICT OF CALIFORNIA       DMR

14              SAN FRANCISCO DIVISION

15

16  WILLIAM EIDENMULLER, on Behalf of      )
    Himself and All Others Similarly Situated and  )   Case No.
17  the General Public,                    )
                                           )
18                    Plaintiff,           )   COMPLAINT   0984
                                           )
19            vs.                          )   CLASS ACTION
                                           )
20  GROUPON, INC., a Delaware Corporation,  )
                                           )   1.  Violation of the Credit Card
21                    Defendants.          )       Accountability Responsibility and
                                           )       Disclosure Act and the Electronic Funds
22                                         )       Transfer Act, 15 U.S.C. § 1693 *et seq.*;
                                           )   2.  Violation of the Unfair Competition Law,
23                                         )       California Business Professions Code
                                           )       § 17200 *et seq.*;
24                                         )   3.  Violation of the False Advertising Law,
                                           )       California Business and professions Code
25                                         )       § 17500 *et seq.*;
                                           )   4.  Violation of the Consumer Legal
26                                         )       Remedies Act, California Civil Code
                                           )       § 1750 *et seq.*; and
27                                         )   5.  Unjust Enrichment
                                           )
28                                         )   DEMAND FOR JURY TRIAL

                   CLASS ACTION COMPLAINT

Plaintiff Dr. William Eidenmuller ("Plaintiff" or "Plaintiff Eidenmuller"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant Groupon, Inc. ("Groupon" or "Defendant") for compensatory damages and equitable, injunctive, and declaratory relief. Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action on behalf of himself and other similarly-situated consumers nationwide who purchased gift certificates for products and services from Groupon. These gift certificates, referred to and marketed as "groupons," are sold and issued with expiration dates that are deceptive and illegal under both federal and state laws.

2.    Groupon is a web-based company that purports to offer discounted deals on a wide variety of products and services, including restaurants and bars, salons and spas, clothing and other retail items, and dance classes and other instructional lessons, among other things.

3.    Groupon's business model is based on offering discounts to consumers en masse by directly partnering with retail businesses that provide the products or services. Groupon promises to increase the sales volume of its retail partners by sending out "Daily Deal" e-mails to its massive subscription base (comprised of tens of millions of consumers nationwide), highlighting and promoting the products and services of its retail partners.

4.    Groupon and its retailer partners share in revenues from "groupon" sales. Once consumers agree to purchase a minimum, specified number of "groupon" gift certificates for a particular "Daily Deal," the "Deal" is triggered, and Groupon charges each consumer the advertised purchase amount. Groupon then sends a confirmatory e-mail to each purchasing consumer with a link to its website for downloading and printing the "groupon" gift certificate, which then may be redeemed with the retail business offering the product or service for a limited period of time.

5.    Groupon partners with hundreds, if not thousands, of retail businesses around the country.

CLASS ACTION COMPLAINT

1    equitable relief based on the violations of the CARD Act and the EFTA, 15 U.S.C. §1693 *et*

2    *seq.*; California's Unfair Competition Law, Cal. Bus. & Prof. Code§ 17200 *et seq.* ("UCL" or

3    "17200"); the False Advertising Law, Cal. Bus & Prof. Code § 17500 *et seq.* ("FAL" or

4    "17500"); Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); and unjust

5    enrichment. Plaintiff seeks damages and equitable relief on behalf of himself and the Class,

6    which relief includes, but is not limited to, full refunds for Plaintiff and Class members,

7    compensatory and punitive damages, an order enjoining Groupon from selling and issuing

8    "groupon" gift certificates with unlawful expiration dates, Plaintiff's reasonable attorneys' fees

9    and expert fees, and any additional relief that this Court determines to be necessary or

10   appropriate to provide complete relief to Plaintiff and the Class.

11                                   JURISDICTION AND VENUE

12        11.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2) and the

13   Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy,

14   exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in

15   which members of the Class of plaintiffs are citizens of a state different from Groupon. In

16   addition, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's

17   state law claims.

18        12.    This Court has personal jurisdiction over Groupon because Groupon is

19   authorized to do business and does conducted business in California, Groupon has specifically

20   marketed, sold and issued "groupon" gift certificates in California, and Groupon has sufficient

21   minimum contacts with this State and/or sufficiently avails itself to the markets of this State

22   through its promotion, sales, and marketing within this State to render the exercise of

23   jurisdiction by this Court permissible.

24        13.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because

25   a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he

26   resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because

27   Groupon transacts substantial business in this District.

28

                                  CLASS ACTION COMPLAINT

**PARTIES**

14.     At all times relevant to this matter, Plaintiff Eidenmuller, resided and continues to reside in Modesto, California.  During the relevant time period, Dr. Eidenmuller received offers for discounted products and services from Groupon and purchased a "groupon" gift certificate based on representations and claims made by Groupon. The "groupon" gift certificate purchased by Dr. Eidenmuller contained an illegal expiration date.

15.     Defendant, Groupon, Inc., is a privately-held company incorporated under the laws of the state of Delaware.  Groupon's corporate headquarters is located in Chicago, Illinois.  Groupon's principal place of business in California is in Palo Alto, California. Groupon is registered to do business in the state of California.  Groupon markets, sells and issues its "groupon" gift certificates to millions of consumers throughout the United States, including hundreds of thousands of consumers in California and in San Francisco County.

**FACTUAL ALLEGATIONS**

A.     **Groupon's Scheme to Sell and Issue Gift Certificates with Illegal Expiration Dates**

16.     Launched in November 2008, Groupon is a "social promotions" website that promises consumers discounted deals on various products and services, purportedly through the power of "collective buying."  To take advantage of the deals offered by Groupon, consumers must sign-up and provide their e-mail address and other information to Groupon. Close to 40 million people worldwide reportedly have signed-up to receive offers from Groupon.

17.     Every weekday, Groupon sends subscribers in each of the cities it operates a "Daily Deal" e-mail, promoting the particular products or services of the retail businesses with which it has partnered.  To trigger the "Daily Deal," consumers must purchase a specified number of "groupon" gift certificates for the particular product or service offered that day. Groupon sends targeted "Daily Deal" e-mails to close to 90 cities throughout the United States.

18.     To arouse consumer interest and create the urgency to buy "groupon" gift certificates, Groupon offers the "Daily Deal" for a limited amount of time, usually a 24-hour period.  This creates a "shopping frenzy" among consumers who feel pressured to purchase

**CLASS ACTION COMPLAINT**

"groupon" gift certificates as quickly as possible. Consumers purchase "groupon" gift certificates directly through Groupon's website, using their credit or debit cards.

19. Groupon also uses electronic social media, such as Facebook and Twitter, to promote and stoke demand for its "Daily Deals," creating additional pressure among consumers to buy "groupon" gift certificates before time runs out.

20. Once Groupon sells the specified number of "groupon" gift certificates for a particular "Daily Deal," the "Deal" is officially on, and consumers are charged for the purchase. Groupon subsequently sends a confirmatory e-mail to purchasers with a link to its website, through which purchasers may download and print their "groupon" gift certificates. Consumers may also purchase and download "groupon" gift certificates directly to their mobile phones using an application available on Groupon's website. "Groupon" gift certificates thereafter may be directly redeemed with the retail businesses offering the products and services.

21. Groupon readily admits on its website that the "groupons" it sells and issues to consumers are in fact gift certificates.

22. Groupon imposes illegal expiration dates, among other onerous conditions, on each "groupon" gift certificate it sells and issues, to the detriment of consumers. The expiration periods on "groupon" gift certificates are frequently just a few months from the date of purchase. Ironically, Groupon knows that after it has driven consumers to purchase "groupon" gift certificates as quickly as possible, many consumers ultimately will be unable to redeem the gift certificates before the expiration period.

23. Accordingly, consumers often cannot take advantage and use the product or service for which they paid before the expiration period imposed by Groupon – leaving a substantial windfall for Groupon and its retail partners.

24. In addition to imposing illegal expiration periods, Groupon foists other deceptive and unfair conditions on consumers. Groupon requires consumers to redeem "groupon" gift certificates in the course of a single transaction. Consumers therefore are

CLASS ACTION COMPLAINT

1    forced to redeem their gift certificates all at once and cannot use their gift certificates for

2    multiple transactions or on multiple occasions.   Likewise, consumers cannot redeem any

3    unused portion of "groupon" gift certificates for the cash amount.   Moreover, based on

4    information and belief, Groupon does not provide cash refunds to consumers when the retail

5    business offering the services or products refuses to honor the "groupon" gift certificate.

6    Groupon essentially places handcuffs on the manner in which consumers can redeem their gift

7    certificates for the products and services offered, even though consumers have already paid in

8    full for such products and services.

9        **B.    Groupon's Retail Business Partners Agree to Sell Gift**
             **Certificates with Illegal Expiration Dates**
10

11           25.    Groupon focuses on two markets – the consumers who wish to obtain the

12   advertised products or services by purchasing "groupon" gift certificates, and the retail

13   businesses who partner with Groupon to promote their products and services.   These retail

14   businesses are willing to partner with Groupon and offer their products and services at a

15   discount because Groupon promises to promote their products and services to its huge

16   subscription base and guarantees them a specified volume of business.   In fact, Groupon

17   promises its retail partners that its "Daily Deal" promotion will bring them new customers

18   "overnight."

19           26.    Groupon partners with both local businesses and large, nationwide companies.

20   Groupon's business model, particularly its ability to establish partnerships with retail

21   businesses, depends in large part on its systematic use of illegal expiration dates.   Groupon

22   knows that its retail partners are not willing to offer their products and services at a discount to

23   consumers through the sale of "groupon" gift certificates, without an agreement to limit the

24   time period for which consumers can redeem the gift certificates.   Accordingly, Groupon and

25   its retail partners, continue to flaunt the law by imposing illegal expiration dates on the

26   "groupon" gift certificates sold to consumers.

27

28

CLASS ACTION COMPLAINT

27.     Groupon attempts to circumvent federal and state gift certificate laws by inserting a disclaimer, titled "Legal Stuff We Have To Say," which is buried at the bottom of "groupon" gift certificates in tiny, barely legible font that is readily overlooked by consumers.

28.     Importantly, the disclaimer is found only on the "groupon" gift certificate itself, which must be downloaded and printed by the consumer.  Thus, consumers who do not download and print their "groupon" gift certificates will never have access to, nor have knowledge of, the disclaimer.

29.     Moreover, the disclaimer does not excuse nor justify Groupon's use of illegal expiration periods.  As set forth below, Groupon's imposition of expiration dates on "groupon" gift certificates constitutes per se violations of federal and state laws, for which there is no applicable exception.

30.     In any event, once "groupon" gift certificates reach their illegal expiration periods, Groupon refuses to honor the bargain originally struck between the parties.

31.     Groupon reaps massive profits from this business model.  Groupon typically takes for itself half (50%) on the sale of each "groupon" gift certificate.  Groupon reportedly made half a billion dollars from "groupon" sales in 2010 alone.  Groupon's retail partners also profit from the influx of new customers and bolstered sales that result from the sale of "groupon" gift certificates.  But again, Groupon and its retail partners' undue profits are based in large part on their use of illegal expiration periods on the gift certificates sold to consumers.

**C.     Plaintiff Eidenmuller's Purchase of Groupon with an Illegal Expiration Date**

32.     On or about November 2, 2009, Plaintiff Eidenmuller received a "Daily Deal" e-mail offer from Groupon for a "groupon" gift certificates.

33.     Under the terms of the "Daily Deal" offer, as set forth on Groupon's website, Dr. Eidenmuller was required to pay $11.00 to Groupon in exchange for a "groupon" gift certificate redeemable for $22.00 worth of food and or drinks at Asquew Grill in Stawberry, California.

CLASS ACTION COMPLAINT

1       34.   "The Fine Print" section of the "Daily Deal" offer stated that the "groupon" gift

2  certificate "Expires Nov. 3, 2010." "The Fine Print" section also imposed the following

3  conditions: "1 per person, 2 additional as gifts. Dine-in only. Not valid with other offers. Tax

4  & gratuity not included. No credit or cash back. . . . Must be used in one visit. . . . Can't be

5  combined with other offers."

6       35.   Dr. Eidenmuller purchased a single "groupon" gift certificate and made

7  payment of $11.00 to Groupon through Groupon's website.

8       36.   Dr. Eidenmuller subsequently received an e-mail from Groupon confirming his

9  purchase of the "groupon" gift certificate. The e-mail contained a link to Groupon's website

10  from which Dr. Eidenmuller could download and print the "groupon" gift certificate.

11      37.   Dr. Eidenmuller was unable to redeem the "groupon" gift certificate before the

12  November 3, 2010 expiration period imposed by Groupon.

13                        **CLASS ACTION ALLEGATIONS**

14       38.   Plaintiff brings this action on behalf of himself and all those similarly situated

15  pursuant to Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

16       39.   Plaintiff seeks certification of the following classes:

17  <u>Plaintiff Federal Class (the "Federal Class")</u>:

18       All persons who purchased or acquired a "groupon" gift certificate from

19  Groupon with an expiration date of less than five years from the date of purchase.

20       Specifically excluded from the Federal Class are Groupon's officers,

21  directors or employees, any entity in which Groupon has a controlling interest,

22  and any of Groupon's affiliates, legal representatives, heirs, or assigns. Plaintiff

23  reserves his right to amend the Class definition if discovery and further

24  investigation reveal that the Class should be expanded or otherwise modified.

25

26  <u>Plaintiff State Class (the "State Class")</u>:

27

28

                              CLASS ACTION COMPLAINT

1       All persons who purchased or acquired a "groupon" gift certificate from

2   Groupon in all states that prohibit the sale of a gift certificate with an expiration

3   date of less than two years from the date of purchase.

4       Specifically excluded from the State Class are Groupon's officers,

5   directors or employees, any entity in which Groupon has a controlling interest,

6   and any of Groupon's affiliates, legal representatives, heirs, or assigns. Plaintiff

7   reserves his right to amend the Class definition if discovery and further

8   investigation reveal that the Class should be expanded or otherwise modified.

9       40.   *Numerosity.* The Federal Class and State Class (collectively the "Classes") are,

10   individually, comprised of millions of consumers throughout California and the United States.

11   The Classes are, individually, so numerous that joinder of all members of the Classes is

12   impracticable.

13       41.   *Commonality.* As outlined below, common questions of law and fact exist as to

14   all members of the Classes. Additionally, common questions of fact and law exist because

15   Plaintiff and all Class Members purchased "groupon" gift certificates under a standardized,

16   uniform, and systematic purchasing process implemented by Groupon.

17       42.   *Adequacy of Representation.* Plaintiff will fairly and adequately protect the

18   interests of the members of the Class because it is in his best interest to prosecute the claims

19   alleged herein to obtain full compensation due to him for the unfair and illegal conduct of

20   which he complains. Plaintiff has retained highly competent counsel and experienced class

21   action attorneys to represent his interests and that of the Class. Plaintiff and his counsel have

22   the necessary financial resources to adequately and vigorously litigate this class action.

23   Plaintiff has no adverse or antagonistic interests to those of the Class. Plaintiff is willing and

24   prepared to serve the Court and the Class members in a representative capacity with all of the

25   obligations and duties material thereto and is determined to diligently discharge those duties by

26   vigorously seeking the maximum possible recovery for Class members.

27

28

CLASS ACTION COMPLAINT

43.  *Typicality.* Plaintiff's claims are typical of the claims of the members of the Classes because he purchased the "groupon" gift certificate from Groupon in a typical retail consumer process and the "groupon" gift certificate had an expiration date. Thus, Plaintiff and Class members sustained the same damages arising out of Groupon's common course of conduct in violation of law as complained of herein. The damages of each Class member was caused directly by Groupon's wrongful conduct in violation of law as alleged herein.

44.  Adequate notice can be given to Class members directly using information maintained in Groupon's records or through notice by publication.

## Rule 23(b)(3)

45.  This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

46.  *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)  Whether Groupon sold and issued "groupon" gift certificates subject to expiration dates;

(b)  Whether Groupon's imposition of expiration dates on "groupon" gift certificates violates federal laws, California state laws, and/or similar laws in other states;

(c)  Whether Groupon engaged in deceptive and unfair business and trade practices related to the imposition of expiration dates on "groupon" gift certificates and other onerous terms and conditions;

(d)  Whether Plaintiff and Class members are entitled to declaratory, injunctive and/or equitable relief; and

CLASS ACTION COMPLAINT

(e)    Whether Plaintiff and Class members are entitled to compensatory damages, including actual and statutory damages plus interest thereon, and if so, what is the nature of such relief?

47.    *Superiority.* A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous actions would engender. Furthermore, the expenses and burden of individual litigants and the lack of knowledge of Class members regarding Groupon's activities, would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudication of such individualized litigation would be substantial.  The trial and litigation of Plaintiffs' claims will be manageable.

48.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

## Rule 23(b)(2)

49.    This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

50.    Plaintiff also seeks injunctive and corresponding declaratory and incidental monetary relief for the entire Class.  Groupon acted in a manner generally applicable to the entire Class by selling and/or issuing "groupon" gift certificates with illegal expiration dates.

51.    Groupon's wrongful conduct and practice to unlawfully sell and/or issue "groupon" gift certificates, if not enjoined, will subject Class members to enormous continuing future harm and will cause irreparable injuries to Class members who are misled and denied their rights.

CLASS ACTION COMPLAINT

52.    Plaintiff also seeks preliminary injunctive relief to enjoin Groupon from selling and/or issuing "groupon" gift certificates with illegal expiration dates. Groupon sells thousands of "groupon" gift certificates *daily* and each sale increases the odds that consumers will fail to redeem their "groupon" gift certificates before the illegal expiration date. The result is that Groupon enjoys a substantial windfall at the expense of Plaintiff, Class members, and consumers nationwide.

53.    The monetary relief sought on behalf of the Class to remedy Groupon's wrongful conduct flows directly from Groupon's liability to the Class as a whole and can be objectively determined. The loss of monies by Class members can be mathematically quantified and does not depend on any subjective assumptions or idiosyncrasies that are particular to individual Class members. Damages may be calculated from the sales records in Groupon's possession, so that the cost of administering a recovery for the Class can be minimized. Importantly, the precise amount of damages available to Plaintiff and other members of the Class is not a barrier to class certification.

## COUNT I

### Violations of the Credit Card Accountability Responsibility and Disclosure Act and Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, on Behalf of Plaintiff and All Class Members Against Groupon

54.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if set forth herein.

55.    The CARD Act, which amends the EFTA, prohibits the sale or issuance of gift certificates that feature and are subject to expiration dates.

56.    Groupon sold and issued and/or agreed to sell and issue "groupons," which are "gift certificates" as defined under 15 U.S.C. § 1693l-1(a)(2)(B). "Groupons" constitute promises that are: (a) redeemable at a single merchant or an affiliated group of merchants; (b) issued in a specified amount that may not be increased or reloaded; (c) purchased on a prepaid basis in exchange for payment; and (d) honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

CLASS ACTION COMPLAINT

57. Indeed, Groupon readily admits on its website that "groupons" are gift certificates.

58. At all relevant times, "groupon" gift certificates were sold and issued to consumers through electronic fund transfer systems established, facilitated and monitored by Groupon.

59. "Groupon" gift certificates are not exclusively issued in paper form, as Groupon provides an e-mail link to consumers to download and print such gift certificates. Moreover, consumers may download "groupon" gift certificates to their mobile phones through an application available on Groupon's website.

60. "Groupon" gift certificates are marketed and sold to the general public and are not issued as part of any loyalty, award, or promotional program.

61. Groupon violated the CARD Act and EFTA by selling and issuing and/or agreeing to sell and issue "groupon" gift certificates with expiration dates, which is plainly prohibited under § 1693l-1(a)(2)(B) and § 1693l-1(c)(1).

62. As a direct and proximate result of Groupon's unlawful acts and conduct, Plaintiff and Class members were deprived of the use of their money that was charged and collected by Groupon through the sale of "groupon" gift certificates with illegal expiration dates.

63. Pursuant to 15 U.S.C. § 1693m, Plaintiff, on behalf of himself and the Class, seeks a Court order for actual and statutory damages to be determined by the court, injunctive relief, as well as reasonable attorneys' fees and the cost of this action.

## COUNT II

### Violation of California Business & Professions Code § 17200 *et seq.*, on Behalf of Plaintiff and Class Members Who Reside in California Against Groupon

64. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if set forth herein.

CLASS ACTION COMPLAINT

65.     Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.

66.     Section 17200 specifically prohibits any *"unlawful ... business act or practice."* Groupon violates § 17200's prohibition against engaging in an unlawful act or practice by, *inter alia,* selling and issuing and/or agreeing to sell and issue "groupon" gift certificates that feature and are subject to expiration dates that are prohibited under both federal law, California state laws, and similar laws in other states.

67.     As discussed above, Groupon's ongoing sale and issuance of gift certificates with expiration dates violates the CARD Act and EFTA, 15 U.S.C. § 1693 *et seq.*

68.     Groupon also violates California's gift certificate laws, Cal. Civ. Code §1749.5, and the CLRA, §1750 *et seq.*, and similar laws in other states by selling and issuing and/or agreeing to sell and issue "groupon" gift certificates with expiration dates. Plaintiff and Class members reserve their right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

69.     "Groupon" gift certificates are marketed and sold to the general public and are *not* "distributed by the issuer to a consumer pursuant to an awards, loyalty, or promotional program without any money or other thing of value being given in exchange for the gift certificate." Cal. Civ. Code §1749.5(d)(1). In addition, "groupon" gift certificates are marketed and sold to the general public and are not "donated or sold below face value at a volume discount to employers or to nonprofit and charitable organizations for fundraising purposes." Cal. Civ. Code §1749.5(d)(2).

70.     Section 17200 also prohibits any *"unfair . . . business act or practice."* As described in the preceding paragraphs, Groupon engaged in the unfair business practice of selling and issuing "groupon" gift certificates with illegal and deceptive expiration dates.

CLASS ACTION COMPLAINT

71.     Groupon, with the approval and agreement of its retail business partners, imposed other unfair conditions on its "groupon" gift certificates, including forcing consumers to redeem the gift certificates in the course of a single transaction and not providing for the exchange of any unused portion of the gift certificates for their cash value. Groupon also unfairly limits consumers from using more than one "groupon" gift certificate during each visit to the retail business offering the particular product or service.

72.     Moreover, based on information and belief, Groupon does not provide cash refunds to consumers when the retail business offering the product or service refuses to honor the "groupon" gift certificate.

73.     Groupon's business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of this State. Further, any justifications for Groupon's wrongful conduct is outweighed by the adverse effects of such conduct. Thus, Groupon engaged in unfair business practices prohibited by California Business & Professions Code § 17200 *et seq*.

74.     Section 17200 also prohibits any *"fraudulent business act or practice."* Groupon violated this prong of the UCL by disseminating and/or agreeing to disseminate, through Groupon's website and other promotional channels, misleading and partial statements about "groupon" gift certificates that have a tendency to mislead the public. Further, Groupon violated this prong of the UCL by omitting material information about "groupon" gift certificates with the intent to induce reliance by consumers to purchase such gift certificates. Groupon's claims, nondisclosures and misleading statements concerning "groupon" gift certificates, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code § 17200.

75.     Section 17200 also prohibits any *"unfair, deceptive, untrue or misleading advertising."* For the reasons set forth above, Groupon engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

CLASS ACTION COMPLAINT

76.     Groupon's conduct caused and continues to cause substantial injury to Plaintiff and other Class members. Plaintiff has suffered injury in fact and lost money as a result of Groupon's unfair conduct.

77.     Additionally, pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order requiring Groupon to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Groupon to return the full amount of money improperly collected to all those who have paid them.

**COUNT III**
**False and Misleading Advertising in Violation of California Business &**
**Professions Code § 17500 *et seq.*, on Behalf of Plaintiff and Class Members**
**Who Reside in California Against Groupon**

78.     Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

79.     California Business & Professions Code § 17500 *et seq.* prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive members of the public to purchase products and services such as the "groupon" gift certificates offered by Groupon.

80.     Groupon's acts and practices as described herein have deceived and/or are likely to deceive Plaintiff and Class members. Groupon's uses its website and targeted "Daily Deal" promotions, along with other social media, such as Facebook and Twitter, to extensively market and advertise the gift certificates with misleading and illegal expiration dates and other deceptive terms to consumers.

81.     By its actions, Groupon has been and is disseminating uniform advertising concerning "groupon" gift certificates, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code § 17500 *et seq.* Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

82.     Groupon intended Plaintiff and Class members to rely upon the advertisements and numerous material misrepresentations as set forth more fully elsewhere in the Complaint.

CLASS ACTION COMPLAINT

1   In fact, Plaintiff and Class members relied upon the advertisements and misrepresentations to

2   their detriment.

3       83.    The above described false, misleading, and deceptive advertising Groupon

4   disseminated continues to have a likelihood to deceive in that Groupon has failed to disclose

5   the true and actual limitations of their gift certificates.  Groupon has failed to instigate a public

6   information campaign to alert consumer of these limitations, which continues to create a

7   misleading perception of the efficacy of its gift certificates.

8                                   COUNT IV

9       **Violations of the Consumer Legal Remedies Act, California Civil Code §1750
        *et seq.*, on Behalf of Plaintiff and Class Members Who Reside in California**

10                              **Against Groupon**

11      84.    Plaintiff repeats and re-alleges each and every allegation contained above as if

12  set forth herein.

13      85.    The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

14  provides protection for California consumers against unfair, deceptive and unlawful practices,

15  and unconscionable commercial practices in connection with the sale of any goods or services.

16      86.    Plaintiff and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

17  The "groupon" gift certificates sold and issued by Groupon constitute "goods" and "services"

18  as defined by Cal. Civ. Code § 1761(a) and (b).

19      87.    Groupon's ongoing placement of illegal expiration dates and imposition of other

20  deceptive sales terms on "groupon" gift certificates violate the following subsections of Cal.

21  Civ. Code §1770(a) in these respects:

22          (5)    Groupon's acts and practices constitute misrepresentations that

23                 "groupon" gift certificates have characteristics, benefits or uses

24                 which they do not have;

25          (7)    Groupon misrepresented that "groupon" gift certificates are of a

26                 particular standard, quality and/or grade, when they are of another;

27          (9)    Groupon's acts and practices constitute the advertisement of

28                 goods, without the intent to sell them as advertised;

                        CLASS ACTION COMPLAINT

(14)   Groupon's acts and practices fail to represent that the transaction involving "groupon" gift certificates confers or involves obligations that are prohibited by law, particularly the imposition of illegal expiration dates and other onerous sales terms;

(16)   Groupon's acts and practices constitute representations that "groupon" gift certificates have been supplied in accordance with previous representations when they have not; and

(19)   Groupon inserted unconscionable provisions in the contract for the purchase of gift certificates, specifically illegal expiration dates and other onerous, one-sided restrictions as to the gift certificates' use and redemption.

88.   By reason of the foregoing, Plaintiff and the Class haven been irreparably harmed, entitling them to injunctive relief, disgorgement and restitution.

39.   Pursuant to § 1782 of the CLRA, Plaintiff notified Groupon in writing of the particular violations of § 1770 of the CLRA and demanded Groupon rectify the actions described above by providing complete monetary relief, agreeing to be bound by its legal obligation and to give notice to all affected customers of its intent to do so. Plaintiff sent this notice by certified mail, return receipt requested, to Groupon's principal place of business.

90.   If Groupon fails to adequately respond to Plaintiffs demand within 30 days of the letter pursuant to § 1782 of the CLRA, Plaintiff will amend this claim to add additional claims for relief, including claims for compensatory and exemplary damages. Plaintiff is already entitled to the relief set forth above, along with costs, attorneys' fees and any other relief which the Court deems proper.

## COUNT V

### Unjust Enrichment on Behalf of Plaintiff and All Class Members Against Groupon

91.   Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if set forth herein.

CLASS ACTION COMPLAINT

92. Groupon was unjustly enriched at the expense of Plaintiff and the Class members by its wrongful acts and omissions described herein, including knowingly and/or recklessly selling and issuing and/or agreeing to sell and issue "groupon" gift certificates that feature and are subject to expiration dates that are prohibited under both federal and California state laws and similar laws in other states; disseminating and/or agreeing to disseminate, through Groupon's website and other promotional channels, misleading and partial statements about "groupon" gift certificates that have a tendency to mislead the public; forcing consumers to redeem the gift certificates in the course of a single transaction; not providing for the exchange of any unused portion of the gift certificates for their cash value; and unfairly limiting consumers from using more than one "groupon" gift certificate during each visit to the retail business offering the particular product or service.

93. Groupon appreciated and/or realized the benefits in the amount of the profits they earned from the sales of "groupon" gift certificates to Plaintiff and Class members.

94. Groupon profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Groupon to be permitted to retain the benefit.

95. Plaintiff and Class members were deprived of the use of their money that was charged and collected by Groupon through the sale of "groupon" gift certificates with expiration dates.

96. Plaintiff does not have an adequate remedy at law against Groupon.

97. Plaintiff and Class members are entitled to restitution of monies paid and disgorgement of the profits derived from the sale of the "groupon" gift certificates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Groupon as follows:

A. For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed classes described herein and appointing Plaintiff to serve as class representative and Plaintiff's counsel as Lead Counsel for the Class;

CLASS ACTION COMPLAINT

1    B.      For an order preliminarily and permanently enjoining Groupon from continuing to

2    sell and issue "groupon" gift certificates and pursue the above policies, acts and practices related

3    to the sale and issuance of such gift certificates;

4    C.      For an order requiring Groupon to fund a corrective advertising campaign in order

5    to remedy its wrongful and illegal conduct;

6    D.      For an order awarding restitution of the monies Groupon wrongfully acquired by

7    its wrongful and illegal conduct;

8    E.      For an order requiring disgorgement of monies wrongfully obtained as a result of

9    Groupon's wrongful and illegal conduct;

10   F.      For compensatory and punitive damages, including actual and statutory damages,

11   arising from Groupon's wrongful and illegal conduct

12   G.      For an award of reasonable attorneys' fees and all costs and expenses incurred in

13   the course of prosecuting this action;

14   H.      For pre-judgment and post-judgment interest at the legal rate; and

15   I.      For such other and further relief as the Court deems just and proper.

16

17                                JURY DEMAND

18   Plaintiff demands a trial by jury on all issues so triable.

19

20   DATED:  March 2, 2011

21

22                              BONNETT, FAIRBOURN, FRIEDMAN
                                & BALINT, P.C.
                                ANDREW S. FRIEDMAN

23                              ELAINE A. RYAN
                                PATRICIA N. SYVERSON (203111)

24

25                              PATRICIA N. SYVERSON

26                              2901 N. Central Avenue, Suite 1000
                                Phoenix, AZ 85012

27                              Telephone: 602/274-1100
                                Facsimile: 602/274-1199

28

                                CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: 619/756-6978
Facsimile: 602/798-5860

Attorneys for Plaintiff

CLASS ACTION COMPLAINT

CV11 0984 DMR

# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Local Rule 5-4 and General Order 45. This means that you **must** (check off the boxes ☑ when done):

☐    **1) Serve** this ECF Registration Information Handout on **all** parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout. Each attorney representing a party must also:

☐    **2) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, do not register again, your registration is valid for life on all ECF cases in this district.

☐    **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐    **4)** Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that - it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856.**

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE. **All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

# U.S. District Court Northern California

## Submitting Initiating Documents

PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled )** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the <u>subject line</u> of all relevant emails to the court.  You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system.  All other documents must be e-filed from then on. You do not need to efile or email the Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

## Converting Documents to PDF

Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov,** and click on **[FAQ].**

## Email Guidelines

When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.
**Examples:**
The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:
**Type of Document**
**Email Subject Line Text**

Complaint Only
03-09999 CRB Complaint

Complaint and
Notice of Related Case
03-09999 CRB Complaint, Related Case

Complaint and Motion for
Temporary Restraining Order
03-09999 CRB Complaint, TRO

**Questions**
Almost all questions can be answered in our **FAQ**s at
**http://ecf.cand.uscourts.gov,** please check them first.
You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.
The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WILLIAM EIDENMULLER,

Plaintiff (s),

v.

GROUPON INC,

Defendant(s).

**E-filing**

No. **C 11-00984 DMR**

**ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES**

ORIGINAL FILED
MAR - 2 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IT IS HEREBY ORDERED that this action is assigned to the Honorable Donna M. Ryu.
When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all
other parties a copy of this order , the Notice of Assignment of Case to a United States
Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2. Counsel must
comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution
(ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize
themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern
District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited number
of printed copies are available from the Clerk's Office for parties in cases not subject to the court's
Electronic Case Filing program (ECF).

IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties
the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern
District Of California," additional copies of which can be downloaded from the following
Internet site: http://www.cand.uscourts.gov.

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 3/2/2011 | Complaint filed | |
| 5/25/2011 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | • file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (c) & ADR L.R. 3-5(b) & (c) |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

**STANDING ORDER FOR
MAGISTRATE JUDGE DONNA M. RYU**
*(Revised February 22, 2011)*

Parties shall comply with the procedures in the Federal Rules of Civil or Criminal

Procedure, the Northern District of California's Local Rules and General Orders, and this

standing order, all of which are available at http://www.cand.uscourts.gov. The parties' failure to

comply with any of the rules or orders may be grounds for monetary sanctions, dismissal, entry

of judgment, or other appropriate sanctions.

## CALENDAR DATES AND SCHEDULING

1.      Criminal motions are heard on the second and fourth Thursdays of the month at 11:00

a.m., or during the regular criminal calendar when Judge Ryu is on criminal calendar duty.  Civil

motions are also heard on the second and fourth Thursdays of the month at 11:00 a.m. Civil case

management and status conferences are heard on Wednesdays at 1:30 p.m.  Civil pretrial

conferences are heard on Wednesdays at 3:00 p.m.

2.      Parties should notice motions (other than discovery motions) pursuant to the local rules.

Parties need not reserve a hearing date, but should confirm the Court's availability at

http://www.cand.uscourts.gov.  The Court may reset hearing dates as the Court's calendar

requires.

3.      For scheduling questions, please call Judge Ryu's courtroom deputy, Ivy Garcia at (510)

637-3639.

## CONSENT CASES

1

Case Management Statements; and (2) have full authority to enter stipulations and make admissions pursuant to that order. Permission for a party to attend by telephone may be granted, in the Court's discretion, upon written request made at least two weeks in advance of the hearing if the Court determines that good cause exists to excuse personal attendance, and that personal attendance is not needed in order to have an effective conference. The facts establishing good cause must be set forth in the request.

9.      All case management, status and pretrial conferences are audio recorded. They are not reported by a court reporter unless counsel requests a court reporter in advance.

**CIVIL DISCOVERY**

**Discovery Disputes**

10.     In order to respond to discovery disputes in a flexible, cost-effective and efficient manner, the Court uses the following procedure. The parties shall not file formal discovery motions. Instead, as required by the federal and local rules, the parties shall first meet and confer to try to resolve their disagreements. The meet and confer session must be *in person or by telephone,* and may not be conducted by letter, e-mail, or fax. If disagreements remain, the parties shall file a joint letter no later than five (5) business days after the meet and confer session. **Lead trial counsel for both parties must sign the letter**, which shall include an attestation that the parties met and conferred in person or by telephone regarding all issues prior to filing the letter. Going issue-by-issue, the joint letter shall describe each unresolved issue, summarize each party's position with appropriate legal authority; and provide each party's final proposed compromise before moving to the next issue. The joint letter shall not exceed ten (10) pages without leave of Court. In the rare instance that a joint letter is not possible, each side may

3

submit a letter not to exceed four (4) pages, which shall include an explanation of why a joint letter was not possible. When appropriate, the parties may submit one exhibit to the letter that sets forth each discovery request at issue in full, followed immediately by the objections and/or responses thereto. No other information shall be included in any such exhibit. No other exhibits shall be submitted without prior approval by the Court. The Court will review the submission(s) and determine whether formal briefing or proceedings are necessary.

11.     In emergencies during discovery events (such as depositions), any party may, after exhausting good faith attempts to resolve disputed issues, seek judicial intervention pursuant to Civil L.R. 37-1(b) by contacting the Court through the courtroom deputy. If the Court is unavailable, the discovery event shall proceed with objections noted for the record.

12.     In the event that a discovery hearing is ordered, the Court has found that it is often efficient and beneficial for the parties if counsel appear *in person*. This provides the opportunity, where appropriate, to engage counsel in resolving aspects of the discovery dispute while remaining available to rule on any disputes that counsel are not able to resolve. For this reason, the Court expects counsel to appear in person. Permission for a party to attend by telephone may be granted, in the Court's discretion, upon written request made at least two weeks in advance of the hearing if the Court determines that good cause exists to excuse personal attendance, and that personal attendance is not needed in order to have an effective discovery hearing. The facts establishing good cause must be set forth in the request.

**Privilege Logs**

13.     If a party withholds information that is responsive to a discovery request by claiming that it is privileged or otherwise protected from discovery, that party shall *promptly* prepare and

4

STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.      Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.      Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.      Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.      Motions: All prior and pending motions, their current status, and any anticipated motions.

5.      Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.      Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.      Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.      Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.      Class Actions: If a class action, a proposal for how and when the class will be certified.

10.     Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.     Relief: All relief sought through complaint or counterclaim, including the amount of any

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.     Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.     Consent to Magistrate Judge For All Purposes: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.     Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.     Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.     Expedited Schedule: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.     Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.     Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.     Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.     Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

-2-

# WELCOME TO THE OAKLAND DIVISIONAL OFFICE OF

# THE UNITED STATES DISTRICT COURT

In addition to the Local Rules, the following guidelines have been provided to ensure that the filing process is accomplished with ease and accuracy. For additional information or assistance, please call the Clerk's Office in San Francisco, San Jose or Oakland.

1. Documents are to be filed in the Clerk's Office at the location of the chambers of the judge to whom the action has been assigned.

2. The Clerk's Office will retain the original plus one copy of most documents submitted. We will conform as many copies as you bring, within reason, for your use.

3. The copy retained goes directly to the assigned judge. Courtesy copies, or instructions for couriers to deliver a copy directly to chambers are inappropriate, unless you have been instructed to do so by court order.

4. In order to facilitate the file stamping process, each original document should be submitted on top of its copies. In other words, group like documents together–as opposed to a set of originals and separate sets of copies.

5. The case number must indicate whether it is a civil or criminal matter by the inclusion of **C** or **CR** at the beginning of the number. Miscellaneous and foreign judgment matters should also be indicated with initials **MISC** or **FJ** at the end of the case number.

6. The case number must include the initials of the judge and/or magistrate judge followed by the letters designating the case Arbitration(ARB), Early Neutral Evaluation (ENE) or Mediation (MED)–if assigned to one of those Alternative Dispute Resolution (ADR) programs.

7. The document caption should include the appropriate judge or magistrate judge involved in a particular matter or before whom an appearance is being made. This is especially important when submitting *Settlement Conference Statements*.

8. Documents are to be stapled or Acco-fastened at the top. Backing, bindings and covers are not required or wanted. Two hole-punched originals will facilitate case processing.

9. Appropriate sized, stamped, self-addressed return envelopes are to be included with proposed orders or when filing documents by mail.

10. Proofs of service should be attached to the back of documents. If submitted separately, you must attach a pleading page to the front of the document showing case number and case caption.

11. There are no filing fees once a case has been opened until an appeal is filed or motion to proceed pro hac vice. See fee schedule for all fees.

12. New cases must be accompanied by a completed and signed Civil Cover Sheet, the filing fee or fee waiver request form and an original plus two copies of the complaint and any other documents. For Intellectual Property cases, please provide an original plus three copies of the underline complaint. Please present new cases for filing before 3:30p.m., as they take a considerable amount of time to process.

13. Copies of forms may be obtained at no charge. They may be picked up in person from any of the Clerk's Offices, by written request with a return envelope provided or down loaded from the "forms" section of the court's website.

14. Computer terminals allowing public access to case dockets and containing information regarding files at the Federal Records Center (FRC) are located in the reception area of the Clerk's Office at each of the three locations. Written instructions are posted by the terminals. Outside of the Clerk's Office, electronic access to dockets is available through PACER.

15. A file viewing room is located adjacent to the reception/filing area. Files may be viewed in this area after signing the log sheet and presenting identification. Files are to be returned in proper order to the clerk's desk. Under no circumstances are files to be removed from this area.

16. The Clerk's Office can only accept payment by exact change or check made payable to Clerk, U.S. District Court. No change can be made for fees or the public copy machine.

17. Pay copy machines are located in the file viewing room/area for public use at twenty five cents per page.

18. Drop boxes for filing when the Clerk's Office is closed are available at each of the three court locations in this district.

## SAN FRANCISCO

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initals |
|---|---|---|---|
| Alsup, William H. | WHA | Chen, Edward M. | EMC |
| Breyer, Charles R. | CRB | James, Maria-Elena | MEJ |
| Chesney, Maxine M. | MMC | Laporte, Elizabeth D. | EDL |
| Conti, Samuel | SC | Larson, James | JL |
| Henderson, Thelton E. | TEH | Spero, Joseph C. | JCS |
| Illston, Susan | SI | Zimmerman, Bernard | BZ |
| Patel, Marilyn Hall | MHP | | |
| Schwarzer, William W | WWS | | |
| Seeborg, Richard | RS | | |
| Walker, Vaughn R | VRW | | |
| White, Jeffrey S. | JSW | | |

## SAN JOSE

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| Fogel, Jeremy | JF | Lloyd, Howard R. | HRL |
| Ware, James | JW | Grewal, Paul S. | PSG |
| Whyte, Ronald M. | RMW | | |

## OAKLAND

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| Armstrong, Saundra B. | SBA | Laurel Beeler | LB |
| Jensen, D. Lowell | DLJ | Donna M. Ryu | DMR |
| Hamilton, Phyllis J. | PJH | | |
| Wilken, Claudia | CW | | |

## EUREKA

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| | | Nandor J. Vadas | NJV |

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT OF CASE**

**TO A UNITED STATES MAGISTRATE JUDGE FOR TRIAL**

Pursuant to General Order 44, the Assignment Plan of the United States District Court for the Northern District of California, this case has been randomly assigned to Magistrate Judge Donna M. Ryu.

Pursuant to Title 28 U.S.C. § 636(c), with written consent of all parties, a magistrate judge may conduct all proceedings in the case. Attached is a form to complete if you consent to proceed before the assigned magistrate judge and a form to complete if you decline to proceed before the assigned magistrate judge. Electronic versions of both forms are also available at the Court's Internet site: http://www.cand.uscourts.gov. Click on Forms-Civil. A party is free to withhold consent without adverse consequences. If a party declines to consent, the case will be randomly reassigned to a district judge and a case management conference will be scheduled on the district judge's calendar as close as possible to the date presently scheduled before the magistrate judge.

You must file your consent or declination by the deadline for filing the initial case management statement.

The plaintiff or removing party shall serve a copy of this notice and all attachments upon all other parties in the action pursuant to Federal Rules of Civil Procedure 4 and 5.

FOR THE COURT,

RICHARD W. WIEKING, CLERK

By: Deputy Clerk

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

No.  C

Plaintiff(s),

**CONSENT TO PROCEED BEFORE A
UNITED STATES MAGISTRATE JUDGE**

v.

Defendant(s).

_____  /

CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of Title 28, U.S.C. Section 636(c), the undersigned party hereby voluntarily consents to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and order the entry of a final judgment.  Appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

Dated: _____

Signature _____

Counsel for _____
(Plaintiff, Defendant or indicate "pro se")

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10
11

No.  C

12

Plaintiff(s),

13

**DECLINATION TO PROCEED BEFORE
A MAGISTRATE JUDGE
AND
REQUEST FOR REASSIGNMENT TO A
UNITED STATES DISTRICT JUDGE**

v.

14
15

Defendant(s).

16

_____/

17

REQUEST FOR REASSIGNMENT TO A UNITED STATES DISTRICT JUDGE

18

The undersigned party hereby declines to consent to the assignment of this case to a United

19

States Magistrate Judge for trial and disposition and hereby requests the reassignment of this case to

20

a United States District Judge.

21
22

Dated: _____        Signature_____

23

Counsel for _____
(Plaintiff, Defendant, or indicate "pro se")

24
25
26
27
28

## A Message from the Chief Judge of the U.S. District Court



As you embark on civil litigation in the United States District Court for the Northern District of California—whether as a party to a lawsuit or as an attorney—I encourage you to familiarize yourself with the range of services provided by the court's magistrate judges and especially to consider consenting to have a magistrate judge handle all aspects of your case, up to and including dispositive motions, jury or court trial and the entry of judgment.

The Northern District is one of the few federal trial courts in the country to assign a wide range of civil cases directly to magistrate judges upon filing. As a consequence, the magistrate judges have direct experience with nearly all types of civil matters filed in our court. Because our court is very busy, agreeing to proceed before a magistrate judge often means that the case will be resolved more quickly than if the case remained before a district judge.

Every magistrate judge in the Northern District underwent a highly competitive selection process and had years of litigation experience before being appointed to the bench.

While consent is customarily given soon after a case is filed, parties may consent to have a magistrate judge preside over their case at any point in the proceedings.

As the biographies that follow demonstrate, each is active in law school teaching and continuing legal education for attorneys. Many have been appointed to important committees within the federal courts.

Each has been appointed based on detailed, confidential feedback from the bar and the community. Combined, the Northern District's magistrate judges bring hundreds of hours of federal judicial experience to their work at our court. Each is equipped to handle the full range of issues presented to our court.

**Vaughn R Walker**
**Chief Judge**

4

5

# HOW CONSENT JURISDICTION WORKS

Since 1979, the parties in a civil action have had the option of consenting to have all aspects of their case, including trial, handled by a United States magistrate judge.[1] The Northern District of California has been one of the leaders nationwide in implementing this process. When a civil action is filed in this District, ordinarily it will be randomly assigned for all purposes to either a district judge or a magistrate judge.[2]

By local practice, a magistrate judge is assigned a civil caseload approximately 30% that of a district judge's civil caseload, in recognition of a magistrate judge's other duties, such as presiding over settlement conferences. Each magistrate judge typically has about 100 consent cases.

In 2009, the magistrate judges completed handling over 900 civil cases in which they had exercised consent jurisdiction. When a case is initially assigned to a magistrate judge, the plaintiff is given a form to use to either consent to or decline magistrate judge jurisdiction.[3] Plaintiff is also required to serve that form on each defendant.

Each party should make a decision regarding magistrate judge jurisdiction as soon as possible, and in any event prior to the case management conference which is generally held about 100 days after the case is filed. Civil L.R. 73-1.

If all parties consent to magistrate jurisdiction, then the magistrate judge to whom the case is assigned will preside over all aspects of the case, through trial. F.R.Civ.P. 73(b). An appeal from the magistrate judge's rulings is made to the appropriate appellate court exactly as if the rulings were from a district judge. F.R.Civ.P. 73(c).

A civil case initially assigned to a district judge may also be reassigned to a magistrate judge if all parties consent to magistrate judge jurisdiction. The parties should expect the district judge to ask at the case management conference whether they have considered consenting to a magistrate judge jurisdiction.

Each magistrate judge has an assigned courtroom designed to accommodate civil jury trials. Each magistrate judge has at least one law clerk. Many have a second law clerk in lieu of a secretary.

Magistrate judges are fully integrated into the court's administration, serving on all court committees and chairing some of them.

Unlike district judges, magistrate judges do not preside over felony criminal matters.

## POTENTIAL BENEFITS OF CONSENTING TO MAGISTRATE JUDGE JURISDICTION

The Northern District Court of California has always recruited experienced trial attorneys of the highest caliber who undergo a merit selection process before being appointed as a magistrate judge. Because of their diverse experiences while in practice and while presiding over civil matters including trials, this District's magistrate judges are able to preside over all types of civil litigation. The biographies of the current magistrate judges are set forth below.

Parties that consent to have their case tried before a magistrate judge will receive a date certain for trial. The right to a speedy trial in felony criminal matters requires district judges to give statutory priority to trying those cases, which can sometimes require that civil trial dates be moved.

The historical experience in this District has been that our magistrate judges have virtually always met their scheduled trial dates. Because magistrate judges' trial dockets are generally less crowded than those of district court judges, they are often able to schedule a trial within a year of the filing of the complaint.

## ENDNOTES

1. Federal Magistrate Act of 1979, 28 U.S.C § 636 (c)(1). See also F.R.Civ.P. 73(b).

2. District Judges, sometimes called Article III Judges, are appointed by the President, confirmed with the advice and consent of the Senate and hold their position for life. Magistrate Judges are appointed by the District Judges of each district following a merit selection process and serve for a period of eight years, subject to reappointment.

3. If the case has been removed from state court, the form is given to the removing party, who is required to serve it on all other parties.

8

# MAGISTRATE JUDGE BIOGRAPHIES

### San Francisco

Magistrate Judge Edward Chen
Magistrate Judge Maria-Elena James
Magistrate Judge Elizabeth Laporte
Magistrate Judge James Larson
Magistrate Judge Joseph Spero
Magistrate Judge Bernard Zimmerman

### Eureka

Magistrate Judge Nandor Vadas

### Oakland

Magistrate Judge Laurel Beeler
Magistrate Judge Donna Ryu

### San Jose

Magistrate Judge Howard Lloyd
Magistrate Judge Patricia Trumbull

9



## MAGISTRATE JUDGE
### EDWARD M. CHEN
**San Francisco**

Magistrate Judge Edward M. Chen was appointed in 2001. He has presided over civil and criminal bench and jury trials, as well as hosted more than 500 settlement conferences. A 1975 graduate of the University of California Boalt Hall School of Law, he clerked for the Honorable Charles B. Renfrew in the Northern District of California and then worked for the Honorable James R. Browning in the Ninth Circuit Court of Appeals.

Judge Chen worked as a litigation associate at Coblentz, Cahen, McCabe & Breyer, and then as staff counsel of the ACLU Foundation of Northern California. He served as an officer of the California Asian American Judges Association, and as a Master of the Edward J. McFetridge American Inn of Courts. Chief Judge Schroeder of the Ninth Circuit appointed him to the Ninth Circuit Task Force on Self-Represented Litigants, and then as the chair of the Ninth Circuit Implementation Committee on Self-Represented Litigants. He was also appointed chair of the Federal Courts Committee on the California Commission on Access to Justice.

Judge Chen has published cases on discovery, privileges, civil procedure, civil and constitutional rights, international human rights, and criminal procedure. He has also published articles in the California Law Review, Asian Law Journal, George Mason Law Review, and Hastings Communications and Entertainment Law Journal. In addition to written accomplishments, he has given presentations on such subjects as electronic discovery, patent litigation, employment law, civil rights, national security and constitutional rights, discrimination, case management, alternative dispute resolution, and Asian American legal history. In 2007, he was voted Judge of the Year by the Barristers Club of San Francisco.



## MAGISTRATE JUDGE
### MARIA-ELENA JAMES
**San Francisco**

Magistrate Judge Maria-Elena James was appointed in 1994. She has presided over numerous cases and conducted thousands of settlement conferences. Outside the courtroom, she teaches a number of classes at three Bay Area law schools: University of California Hastings, University of San Francisco, and Golden Gate University.

She also co-created a course called *The Roles of Referees and Commissioners* and taught the course, along with another course, at the California Judicial Education and Research College.

A 1978 graduate of the University of San Francisco Law School, she served as director of the Small Claims Court Education Project in the Consumer Fraud Unit of the San Francisco District Attorney's Office. She went on to serve as a deputy public defender in San Francisco, staff attorney for the National Labor Relations Board, and Deputy City Attorney as well as supervising attorney in San Francisco.

Judge James then served as a Commissioner in the San Francisco Superior Court for six years. She volunteers as a mock trial judge for all grades of students and serves as a mentor to law students. Her speaking engagements include a 2006 panel on Comparative Racial Justice at the University of Paris, Nanterre and the Assemblee Nationale.



## MAGISTRATE JUDGE
## ELIZABETH D. LAPORTE
### San Francisco

Magistrate Judge Elizabeth Laporte was appointed in 1998. She has presided over numerous civil cases through trial or other disposition, including patent, trademark, copyright, employment, civil rights and environmental cases. She also has conducted over 1000 settlement conferences, handled criminal matters, and resolved discovery disputes.

A 1982 graduate of Yale Law School and a Marshall Scholar, she clerked for the Honorable Marilyn Hall Patel in the Northern District of California. She was a partner at the boutique litigation firm of Turner & Brorby, and an Administrative Law Judge for the California Department of Insurance. In 1996, she began serving as Chief of Special Litigation for the San Francisco City Attorney's Office, and was named a Lawyer of the Year by *California Lawyer*. She has authored articles on patent litigation and settlement in the *Northern California ABTL [Association of Business Trial Lawyers] Report*, and has written on e-discovery.

Judge Laporte serves on the Board of Governors for the Northern California Chapter of the Association of Business Trial Lawyers and the Executive Committee of the Litigation Section of the Bar Association of San Francisco. She is also a judicial observer for the Sedona Conference Working Group on Electronic Document Retention and Production.

Judge Laporte has recently been appointed the Alternative Dispute Resolution Magistrate Judge for the Northern District of California, is a past chair of the Magistrate Judge Executive Board of the Ninth Circuit, and was a member of the Jury Trial Improvement Committee of the Ninth Circuit Court of Appeals from 2002 to 2009. She regularly speaks at legal conferences and judicial education programs on patent litigation, jury trials, e-discovery, employment law, settlement, and other topics.



## MAGISTRATE JUDGE
## JAMES LARSON
### San Francisco

Magistrate Judge James Larson was appointed in 1997. He was appointed Chief Magistrate Judge in 2005 for a four year term. He has presided over criminal and civil cases, handled discovery and conducted settlement conferences in a variety of subject areas, including intellectual property, antitrust, contracts, civil rights, employment, environmental, class actions and other statutory liability. He has conducted more than 1,000 mediations and settlement conferences.

He received his undergraduate degree from Stanford University in 1965 and his J.D. from U.C.L.A. law school in 1968, where he was selected for the Moot Court Honors Program. Thereafter he worked in a number of small firms in Los Angeles and the Bay Area, handling admiralty, personal injury, civil rights and criminal matters before founding the law firm of Larson and Weinberg in San Francisco, where he remained until 1990. He then formed his own firm and worked on civil, criminal, trial and appellate cases.

Judge Larson has taught civil trials and criminal pre-trial procedure and has participated for many years in the Intensive Trial Advocacy Program at Cardozo Law School in New York.

Judge Larson has chaired or served on numerous court committees and has appeared on panels of judges and attorneys discussing e-discovery issues, class actions, settlement techniques, punitive damages, and bad faith litigation. In December, 2007, he and several other members of the court conducted a comprehensive mediation training program for the High Court Judges of Malaysia.



## MAGISTRATE JUDGE
## JOSEPH C. SPERO
San Francisco

Magistrate Judge Joseph C. Spero was appointed in 1999. He has presided as trial judge in criminal and civil cases in a variety of subject areas, including patent, employment, civil rights, commercial contract, trademark, and federal misdemeanor cases. He has also served as a settlement judge in over 1000 cases.

He serves as the liaison judge for Pretrial Services and Probation, and as a member of the court's Technology Practice and Non-Appropriated Funds Committees.

A 1981 graduate of Columbia University School of Law, he clerked for the United States Court of Appeals for the Ninth Circuit. He worked as an associate at Skadden, Arps, Slate, Meagher & Flom, and as associate then partner at Coblentz, Cahen, McCabe & Breyer (now Coblentz, Patch, Duffy & Bass).

While in private practice, he trained as a mediator at Harvard Law School and served as a mediator in the Northern District's Alternative Dispute Resolution Program. He also served as a Judge Pro-Tem for the San Francisco County Superior Court.

Judge Spero served as pro bono counsel in a variety of cases. He received the Thurgood Marshall Award from the Bar Association of the City of New York.



## MAGISTRATE JUDGE
## BERNARD ZIMMERMAN
San Francisco

Magistrate Judge Bernard Zimmerman was appointed in 1995. With party consent, he has presided over a wide range of civil cases, including patent, trademark and copyright cases, class actions, contract and employment cases and civil rights, personal injury and admiralty cases. He has presided over more than 30 civil and criminal jury and bench trials and more than 1,000 settlement conferences. He chairs the court's Technology Committee and serves on the Media and Budget Committees.

A 1970 graduate of the University of Chicago Law School, he clerked for the Honorable Frederick J.R. Heebe in the Eastern District of Louisiana and then taught law at the Louisiana State University Law Center. Returning to California, he was an associate and then partner at Pillsbury Madison & Sutro where he had a general litigation practice focusing on media, banking, construction, insurance and business issues. In 1995, he served as Legal Consultant to the Third Constitutional Convention of the Commonwealth of the Northern Mariana Islands.

In past years, he has taught Federal Pretrial Litigation at Hastings College of the Law. He is a master of the Intellectual Property Inn of Court and has participated in numerous panels addressing issues such as ADR, class actions and discovery.



## MAGISTRATE JUDGE
## NANDOR VADAS
### Eureka

Magistrate Judge Nandor J. Vadas was appointed to the bench in 2004. Although Judge Vadas maintains his chambers in Eureka, he also presides over cases in San Francisco. Judge Vadas has presided over a wide variety of criminal cases and civil cases, including matters involving civil rights, employment discrimination, the Americans with Disabilities Act, Indian law, and the Endangered Species Act.

Judge Vadas has worked to improve and expand the services offered by the Court's Eureka division and he has initiated an innovative early settlement program for prisoner civil rights cases designed to provide an alternative method of resolving some of the hundreds of lawsuits brought each year by unrepresented California prisoners housed at Pelican Bay State Prison. The success of the program led to its expansion to state prisons in the Northern District of California and to some prisons in the Eastern District of California.

Judge Vadas served as Deputy District Attorney for Humboldt County and as Special Assistant United States Attorney for the Eureka region. As a district attorney he prosecuted all federal misdemeanor cases heard in the federal magistrate judge court in Eureka and investigated federal drug and money laundering crimes. He taught a variety of criminal justice courses at the Redwood Police academy at College of the Redwoods.

He served as a deputy district attorney for the City and County of San Francisco from 1983–1989, and as an Assistant United States Attorney in San Francisco from 1989–1998. Judge Vadas is a former member of the Magistrate Judges' Advisory Committee to the Federal Judicial Conferences, and he is a member of the Board of Directors of Project Leaping Stone, which builds schools in West Africa. He graduated from the University of California-Santa Cruz and Hastings College of the Law.

All new civil and criminal actions arising in the counties of Del Norte, Lake, Humboldt and Mendocino will be assigned directly to Judge Vadas, subject to consent under 28 USC § 636(c)(1).



## MAGISTRATE JUDGE
## LAUREL BEELER
### Oakland

Magistrate Judge Laurel Beeler was appointed in 2010. Before joining the Court, she was an assistant United States attorney in the Northern District, prosecuting complex white-collar cases with parallel criminal and civil components. While at the United States Attorney's Office, she served as the Professional Responsibility Officer, Deputy Chief of the Criminal Division, and Major Crimes supervisor. Before that, she was a law clerk to the Honorable Cecil F. Poole, United States Court of Appeals for the Ninth Circuit, and was the Civil Appeals Division Chief at the Ninth Circuit's Office of Staff Attorneys.

Judge Beeler has served as President of the Northern District of California's Federal Bar Association, as co-chair of the Lawyer Representatives to the Ninth Circuit from the Northern District, and as a member of the board of directors for the Bar Association of San Francisco (BASF). She is a member of the Ninth Circuit's Jury Trial Improvement Committee, the Northern District of California's Criminal Rules & Practice Committee, BASF's Criminal Advisory Committee, and the Edward J. McFetridge American Inn of Court. In April 2006, Judge Beeler received the Northern District Judicial Conference's Public Service Award.

Judge Beeler teaches Criminal Procedure at U.C. Hastings College of the Law and a civics class at the San Francisco Court School for Juvenile Offenders. She lectures regularly at Bay Area law schools and participated in rule-of-law projects in Indonesia, Vietnam, Cambodia, the Philippines, and Jordan. In 2009, as part of a United States Department of Justice/USAID project, she consulted with the Minister of Justice and the Attorney General of Jordan on draft judicial reform legislation to separate judicial and prosecutorial functions.

Judge Beeler graduated with honors from the University of Washington School of Law, where she was Order of the Coif and an Articles Editor on the Washington Law Review. She received her A.B. with honors from Bowdoin College.



## MAGISTRATE JUDGE
## DONNA RYU
Oakland

Magistrate Judge Donna M. Ryu was appointed in 2010. Before joining the Court, she served as a Clinical Professor of Law at U.C. Hastings College of the Law and as Associate Professor and Associate Director of the Women's Employment Rights Clinic of Golden Gate University Law School. Her clinical courses included instruction on negotiation, mediation, and trial techniques, as well as employment and social security disability law. She also taught in the area of legal ethics.

She began her legal career with McCutchen, Doyle, Brown & Enersen in San Francisco before joining an Oakland-based firm specializing in civil rights class actions. She later formed her own firm, Ryu, Dickey & Larkin. She has extensive experience in discovery and motion work, as well as trial work involving complex litigation.

She has been honored as a California Lawyer of the Year in Employment Law. She is also the recipient of the Asian American Bar Association's Joe Morozumi Award for Exceptional Legal Advocacy, and the Rutter Award for Excellence in Teaching. She co-designed and served on the faculty of a national training institute on class actions, and has written and lectured extensively in the areas of employment law, discovery, attorneys' fees, class actions, and professionalism in lawyering.

Judge Ryu graduated with honors from Yale University, and received her law degree in 1986 from U.C. Berkeley Law School, where she was a founder of the *Berkeley Journal of Gender, Law and Justice.*

18



## MAGISTRATE JUDGE
## HOWARD R. LLOYD
San Jose

Magistrate Judge Howard R. Lloyd was appointed in 2002. He has presided over a variety of civil and criminal trials and has extensive discovery as well as case-dispositive law and motion experience. He has presided over hundreds of settlement conferences in a wide variety of civil cases.

Judge Lloyd earned his undergraduate degree at the College of William and Mary, graduating Phi Beta Kappa, and his law degree from the University of Michigan Law School. He then worked as a civil trial and appellate lawyer for 30 years with a prominent San Jose law firm and personally tried many cases and argued dozens of appeals. He practiced in all areas, but especially employment, intellectual property, and commercial law. He then worked for 2 years as an independent and full time arbitrator and mediator.

While in private practice Judge Lloyd was selected for voluntary service as an Early Neutral Evaluator (N.D. CA), mediator (California Court of Appeals), and Settlement Judge Pro Tem (Santa Clara County Superior Court). He is a frequent presenter at continuing education courses for attorneys and currently teaches at Santa Clara University Law School.

19




# MAGISTRATE JUDGE
## PATRICIA V. TRUMBULL
### San Jose

Magistrate Judge Patricia V. Trumbull was appointed in 1987. She served as Chief Magistrate Judge from 2001 to 2005. She has presided over numerous civil and criminal trials and thousands of settlement conferences.

Judge Trumbull received her undergraduate degree from University of California Davis and her law degree, at the Georgetown University Law Center in Washington, D.C. While at Georgetown, she interned at the Department of Justice.

After graduating, she spent two years as a law clerk to the Honorable Spencer Williams of the U.S. District Court of Northern California. Following the clerkship, she worked for 12 years as an Assistant Federal Public Defender.

She has served on numerous court committees and participated in many panel discussion on a variety of litigation issues.

20

21